Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Phone: 877-206-4741
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE DOCKEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PETMATRIX, LIMITED LIABILITY COMPANY, and DOES 1-20, inclusive,<br><br>Defendant(s). | Case No:<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>(1) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500 *et seq*.) and<br>(2) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq*.)<br>(3) Violation of New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 *et seq*.) |

## **INTRODUCTION**

1. This is a proposed class action, brought on behalf of all those who purchased PetMatrix's brand **"Dream Bone,"** dog treats between February 10, 2012 and the present ("the Nationwide Class").

2. **"Dream Bone"** ("the Product") is a food product which is manufactured and distributed by Defendants.

3. Defendants advertise that the Product is, "99 percent digestible and contained no rawhide." However, despite this, the Product contains a large amount

of Sorbitol and other ingredients, which Plaintiff is informed and believes, is partially or completely indigestible.

4. Thus, each and every package of the Product bears a uniformly-worded label which makes the same false, affirmative statements of fact regarding the amount of digestible ingredients included in the Product.

5. Upon information and belief, Defendants have been fully aware that the Product contains a large amount of indigestible ingredients.

6. This complaint seeks injunctive, declaratory and monetary relief for Plaintiffs and the proposed Nationwide Class, as outlined in greater detail herein.

## JURISDICTION AND VENUE

7. There is federal subject matter jurisdiction over this matter under the Class Action Fairness Act in that it is a proposed class action, there are more than 100 members of the Class, at least some class members and subclass members and some defendants are citizens of different states, and the amount in controversy is more than $5 million.

## THE PARTIES

8. Defendant Petmatrix is a privately held corporation, incorporated in the State of New Jersey, and with its principle lace of business in Saddle Brook New Jersey.

9. Plaintiff alleges, on information and belief, that Defendant's marketing campaigns, as pertains to this matter, were created by Defendant at its principle place of business in New Jersey, and were disseminated from New Jersey, nationwide.

10. Plaintiff is informed and believes, and thereon alleges, that at all time relevant, Defendant's sales of products and services are governed by the controlling law in the state in which they do business and from which the sales or products and services, and the allegedly unlawful acts originated, which is New Jersey.

11.     Plaintiff Charlotte Docken resides in Orange, California.

12.     Like all members of the proposed class, Plaintiff purchased the Product between May, 2012 and the present.

13.     Specifically, Plaintiff purchased the Product at Walmart Store #02082 located in 12701 Towne Center Dr, Cerritos, CA 90703, on December 4, 2016.

14.     Defendant PetMatrix, Limited Liability Company is a limited liability company which is headquartered at SaddleBrook, NJ 07663. The uniformly-worded label on the product admits, <u>inter</u> <u>alia</u>, that the product was **"PetMatrix<sup>TM</sup>"** Upon information and belief, Defendant PetMatrix, Limited Liability Company is the manufacturer and distributor of the Product.

15.     The above named Defendants, and their subsidiaries and agents, are collectively referred to as "Defendants."  The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 20, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

16.     Plaintiff is informed and believes that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiff is informed and believes that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a Nationwide Class ("the Class") defined as:

> **All persons who, between May, 2012 and the present, purchased one or more containers of "Dream Bone" in the United States.**

18. Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23, on behalf of a California Sub-Class ("the Sub-Class") defined as:

> **All persons who, between February 10, 2012 and the present, purchased one or more containers of "Dream Bone" in California.**

19. The members of the Class and Sub-Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

20. Upon information and belief, the proposed Class and Subclass are each composed of over thousands of persons.

21. No violations alleged in this complaint are a result of any oral communications or individualized interaction of any kind between Class members and Defendants.

22. Rather, all claims in this matter arise from the identical, false, written affirmative statements on the Product label as outlined in detail herein.

23. There are common questions of law and fact affecting the rights of all Nationwide Class members, including, inter alia, the following:

   a. Whether there was a large amount of indigestible ingredients in the Product;
   b. Whether Defendants' act of writing on the Product "99 percent digestible" was a false, affirmative statement of fact;
   c. Whether each Defendant was aware that the Product contained a large amount of indigestible ingredients; and
   d. The date each Defendant became aware that the Product contained a large amount of indigestible ingredients.

24. In addition, there are common questions of law and fact affecting the rights of all California Sub-Class members, including, inter alia, the following:

   a. Whether Defendants' actions, as outlined herein, violated the California Business & Professions Code § 17200 et seq.;

Complaint - 4

      b. Whether Defendants' actions, as outlined herein, violated the California Business & Professions Code § 17500 <u>et</u> <u>seq</u>.;

25. Plaintiff is a member of the Class and Sub-Class she seeks to represent.

26. The claims of Plaintiff are not only typical of all Class and Sub-Class members, they are identical.

27. All claims of Plaintiff and the Class and Sub-Class arise from the identical false, written statement of affirmative fact on the Product label as described herein.

28. All claims of Plaintiff and the Class are based on the same legal theories.

29. All claims of Plaintiff and the Sub-Class are based on the same legal theories.

30. Plaintiff has no interest antagonistic to, or in conflict with the Class and Sub-Class.

31. Plaintiff will thoroughly and adequately protect the interests of the Class and Sub-class, having retained qualified and competent legal counsel to represent themselves and the Class and Sub-Class.

32. Defendants have acted and refused to act on grounds generally applicable to the Class and Sub-Class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

33. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

34. A class action is the only practical, available method for the fair and efficient adjudication of the controversy since, <u>inter</u> <u>alia</u>, the damages suffered by each class member were $25 per container of the Product purchased and, as such, individual actions are not economically feasible.

35. Common questions will predominate, and there will be no unusual manageability issues.

## FACTUAL ALLEGATIONS

36. Defendants are in the business of distributing, marketing, selling, and/or manufacturing inter alia, **"Dream Bone."**

37. The Product has borne a uniformly-worded label as **"99 percent digestible."**

38. In actuality, the product contained a large amount of indigestible ingredients.

39. Since the initial offering of the Product, each and every label on this Product has borne a uniformly-worded label which includes, inter alia, the word **"Sorbitol"** as the third listed ingredient under the word **"INGREDIENT."**

40. Sorbitol is indigestible, and is widely characterized and classified, including by the FDA, as an indigestible sugar alcohol, and is used as a laxative.

41. Defendants, as distributors, developers, sellers and/or manufacturers of **"Dream Bone,"** have been aware since the Product's inception that the Product contains a large amount of indigestible ingredients.

42. Defendants include ingredients in their products that are laxatives in order to make the product easier to pass through animals' digestive tracts, giving it the illusion that the product is easily digestible, when in fact it is not. .

43. It is equally clear that Defendants have been fully aware for some time that in order to label a product as "**99 percent digestible**," the product must at least contain a large percent of digestible ingredients and a very small percent of indigestible ingredients.

44. Plaintiff purchased the Dream Bone for her pet dog Maxie. Shortly after giving the Dream Bone to Maxie, Plaintiff noticed that there was something wrong with her dog. Plaintiff took her dog to the veterinarian, because the dog was not eating, was vomiting, was experiencing bloody discharge from his

rectum, and was exhibiting other symptoms of a digestive blockage. Plaintiff's veterinarian ordered an x-ray and noticed a large obstruction in Maxie's abdomen.

45. Maxie was given surgery to remove the obstruction  The veterinarian informed Plaintiff that he removed a large piece of a dog chew from Maxie's abdomen, which matched the description of the Dream Bone Plaintiff has given Maxie prior to the blockage. The veterinarian infored Plaintiff that if it was not for her quick decision to take Maxie to the vet and approve surgery, Maxie would have died.

46. Plaintiff is meticulous about the diet and care she gives to her dogs. The Dream Bone was the only new item introduced to Maxie in the short time frame preceding the incident.

47. Plaintiff felt mislead by Defendant's packaging, because the advertisement on the package said the Dream Bone was 99 percent digestible and showed a picture of a small dog on the front of the packaging, implying that it was safe for small dogs to ingest, and was digestible.

48. Despite all of the foregoing, Defendants continue to sell the Product, with the same written, false, uniformly-worded statements on the Product label outlined herein, throughout the United States.

## COUNT I
## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.
### Unlawful Business Acts and Practices
### On Behalf of the California Sub-Class

49. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

50. Defendants' conduct as set forth herein constitutes unlawful business acts and practices within the meaning of the California Business & Professions Code §17200, et seq.

51. Defendants sold the Product in California during the relevant class period applicable to Plaintiff and the members of the Sub-Class.

52. Defendants are each a "person" within the meaning of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code section 109875, et seq. (the "Sherman Law").

53. Defendants' business practices, as described herein, are unlawful under section 17200, et seq. by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

54. Defendants sold Plaintiff and the members of the Sub-Class the Product.

55. As a result of Defendants' illegal business practices, Plaintiff and the members of the Sub-Class, pursuant to California Business and Professions Code section 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to Plaintiff and members of the Class any money paid for the Product.

56. Defendants' unlawful business acts present a threat and a reasonable continued likelihood of injury to Plaintiff and members of the Sub-Class.

57. As a result of Defendants' conduct, Plaintiff and members of the Sub-Class, pursuant to California Business and Professions Code section 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore to Plaintiff and members of the Sub-Class any monies paid for the Product.

///

///

///

## COUNT II

## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.

### Unfair Business Acts and Practices

### On Behalf of the Sub-Class

58. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

59. Defendants' conduct as set forth herein constitutes unfair business acts and practices within the meaning of the California Business and Professions Code § 17200, et seq.

60. Defendants sold the Product during the relevant class period applicable to Plaintiff and the members of the Sub-Class.

61. Plaintiff and the members of the Sub-Class suffered a substantial injury by virtue of buying the Product which they would not have suffered absent Defendants' illegal conduct.

62. Defendants' deceptive marketing, advertising, packaging and labeling of the Product and their sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

63. Defendants sold the product to Plaintiff and the Sub-Class.

64. Plaintiff and the members of the Sub-Class had no way of reasonably knowing that the Product was misbranded and was not properly marketed, advertised, packaged and labeled, and thus they could not have reasonably avoided the injury each of them suffered.

65. The consequences of Defendants' conduct as set forth herein outweigh any justification, motive or reason therefor. Defendants' conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Sub-Class.

66. Pursuant to Business and Professions Code § 17203, and as a result of Defendants' conduct, Plaintiff and the Sub-Class are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid by Plaintiff and the members of Sub-Class to purchase the Product from Defendants in California.

## COUNT III
## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 et seq.
### Fraudulent Business Acts and Practices
### On Behalf of the Sub-Class

67. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

68. Defendants' conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code section 17200, et seq.

69. Defendants' conduct in mislabeling and misbranding its food products originated from and was approved at Defendants' headquarters.

70. Defendants sold the Product during the relevant class period.

71. Defendants' misleading marketing, advertising, packaging, and labeling of the Product and their misrepresentations that the Product was salable, capable of legal possession and not misbranded were likely to deceive reasonable consumers and, in fact, Plaintiff and the members of the Sub-Class were deceived. By the acts set forth herein, Defendants have engaged in fraudulent business acts and practices.

72. Defendants' fraud and deception caused Plaintiff and members of the Class to purchase the Product from Defendants which they would have not otherwise purchased had they known the true nature of the Product.

73. Defendants sold Plaintiff and members of the Sub-Class the Product, which was not capable of being sold or held legally and which was legally worthless. Plaintiff and members of the Sub-Class paid a premium price for the Product.

74. As a result of Defendants' conduct as set forth herein, Plaintiff and members of the Sub-Class, pursuant to California Business and Professions Code section 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for the Product by Plaintiff and members of the Sub-Class.

## COUNT IV
## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500 et seq.
### Misleading and Deceptive Advertising
### On Behalf of the Sub-Class

75. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

76. Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500, et seq. for misleading and deceptive advertising against Defendants on behalf of the Sub-Class.

77. Defendants sold the Product to Plaintiff and the members of the Sub-Class.

78. Defendants sold the Product to Plaintiff and the Sub-Class.

79. By the acts alleged herein, Defendants engaged in a scheme of offering the Product for sale to Plaintiff and the members of the Sub-Class by way of, inter alia, product packaging and labeling.

80. These materials misrepresented and/or omitted the true contents and nature of Defendants' Product, as outlined in greater detail previously.

81. Defendants' labels for the Product were used come within the definition of advertising as contained in California Business and Professions Code § 17500, et seq. in that such Product packaging and labeling were intended as inducements to purchase the Product and are statements disseminated by Defendants to Plaintiff and the Sub-Class that were intended to reach members of the Sub-Class.

82. Defendants knew, or in the exercise of reasonable care, should have known, that these statements were misleading and deceptive as set forth herein.

83. In furtherance of their plan and scheme, Defendants prepared and distributed product packaging and labeling, statements that misleadingly and deceptively represented the composition and the nature of the Product.

84. Plaintiff and the members of the Sub-Class necessarily and reasonably relied on Defendants' labels, and were the intended targets of such representations.

85. Indeed, as the misrepresentations at issue were contained on the label of the Product itself, the Court may presume that the members of the Sub-Class relied upon this false statement.

86. Defendants' conduct in disseminating misleading and deceptive statements in California to Plaintiff and the members of the Sub-Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of the Product in violation of the "misleading prong" of California Business and Professions Code § 17500, et seq.

87. As a result of Defendants' violation of the "misleading prong" of California Business and Professions Code § 17500, et seq., Defendants have been unjustly enriched at the expense of Plaintiff and the members of the Sub-Class.

88. Pursuant to California Business and Professions Code § 17535, Plaintiff and the members of the Sub-Class are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be

necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Product in California.

## COUNT V
## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500 et seq.
### Untrue Advertising
### On Behalf of the Sub-Class

89. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

90. Plaintiff asserts this cause of action against Defendants on behalf of the Sub-Class for violations of California Business and Professions Code § 17500, et seq., regarding untrue advertising.

91. Defendants engaged in a scheme of offering the Product for sale to Plaintiff and the members of the Sub-Class by way of product packaging and labeling, as outlined herein.

92. These materials misrepresented and/or omitted the true contents and nature of the Product.

93. With regard to sales of the Product during the class period relevant to the Sub-Class, Defendants' advertisements and inducements come within the definition of advertising as contained in California Business and Professions Code § 17500, et seq. in that the Product's packaging and labeling were intended as inducements to purchase the Product, and are statements disseminated by Defendant to Plaintiff and the Sub-Class.

94. Defendants knew, or in the exercise of reasonable care, should have known that these statements were untrue.

95. In furtherance of their plan and scheme, Defendants prepared and distributed via the Product's packaging and labeling, statements that falsely advertise the composition of the Product, as outlined in greater detail previously, and which falsely misrepresented the nature of the Product.

96. Plaintiff and the members of the Sub-Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

97. Defendants' conduct in disseminating untrue advertising deceived Plaintiff and members of the Sub-Class by obfuscating the true contents, nature and quality of the Product in violation of the "untrue prong" of California Business and Professions Code § 17500.

98. As a result of Defendants violations of the "untrue prong" of California Business and Professions Code § 17500, et seq., Defendants have been unjustly enriched at the expense of Plaintiff and the members of the Sub-Class.

99. Pursuant to California Business and Professions Code § 17535, Plaintiff and the members of the Sub-Class are entitled to an order enjoining such further conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for the Product by Plaintiff and the members of the Class.

## COUNT VI
## NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. 56:8-1 et seq.
## On Behalf of the Class

100. Plaintiff incorporates all preceding paragraphs of this complaint as if set forth fully herein.

101. The New Jersey Consumer Fraud Act ("CFA") was enacted to protect consumers against sharp and unconscionable commercial practices by persons engaged in the sale of goods or services. See Marascio v. Campanella, 298 N.J. Super. 491, 500 (App. Div. 1997).

102. The CFA is a remedial statute which the New Jersey Supreme Court has repeatedly held must be construed liberally in favor of the consumer to accomplish its deterrent and protective purposes. See Furst v. Einstein Moomjy, 182 N.J. 1, 11-12 (2004) (**"The Consumer Fraud Act is remedial legislation**

that we construe liberally to accomplish its broad purpose of safeguarding the public."**).

103. With regard to the CFA, **"[t]he available legislative history demonstrates that the Act was intended to be one of the strongest consumer protection laws in the nation."** New Mea Const. Corp. v. Harper, 203 N.J. Super. 315, 319 (App. Div. 1986).

104. For this reason, the **"history of the Act is one of constant expansion of consumer protection."** Kavky v. Herballife International of America, 359 N.J. Super. 497, 504 (App. Div. 2003).

105. The CFA was intended to protect consumers **"by eliminating sharp practices and dealings in the marketing of merchandise and real estate."** Lemelledo v. Beneficial Management Corp., 150 N.J. 255, 263 (1997).

106. Specifically, N.J.S.A. 56:8-2 of the CFA prohibits **"unlawful practices,"** which are defined as:

> **"The act, use or employment of any unconscionable commercial practice, deception, fraud, false pretense, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission whether or not any person has in fact been misled, deceived or damaged thereby."**

107. The catch-all term **"unconscionable commercial practice"** was added to the CFA by amendment in 1971 to ensure that the Act covered, inter alia, **"incomplete disclosures."** Skeer v. EMK Motors, Inc., 187 N.J. Super. 465, 472 (App. Div. 1982).

108. In describing what constitutes an **"unconscionable commercial practice,"** the New Jersey Supreme Court has noted that it is an amorphous concept designed to establish a broad business ethic. See Cox v. Sears Roebuck & Co., 138 N.J. 2, 18 (1994).

109. **"Dream Bone"** is a "credence good," because its properties and purported benefits cannot be independently assessed or verified by the consumer at the time of purchase and such properties and benefits are made known to consumers only through the information provided on the label by the product's manufacturer and distributor. See <u>Lee v. Carter-Reed Co.</u>, L.L.C. 203 N.J. 496, 522 (2010). <u>See</u> also Richard A. Posner, An Economic Approach to the Law of Evidence, 51 Stan. L.Rev. 1477, 1489 (1999) (**"A good is a credence good if the consumer cannot readily determine its quality by inspection or even use, so that he has to take its quality 'on faith.'"**).

110. The New Jersey Supreme Court in <u>Lee v. Carter-Reed Co., L.L.C.</u>, 203 N.J. 496, 522 (2010) spoke regarding the relationship between dishonest product labeling and credence goods, stating:

> **"A rational consumer does not randomly take a bottle of pills off a shelf and then purchase it without reading the packaging and labeling."**

111. In order to state a cause of action under the CFA, a plaintiff <u>does not</u> need to show reliance by the consumer. See <u>Varacallo v. Massachusetts Mut. Life Ins. Co.</u>, 332 N.J.Super. 31, 43, 752 A.2d 807 (App.Div.2000); <u>Gennari v. Weichert Co. Realtors</u>, 148 N.J. 582, 607-608, 691 A.2d 350 (1997) (holding that reliance <u>is not required</u> in suits under the CFA because liability results from **"misrepresentations whether 'any person has in fact been misled, deceived or damaged thereby'"**).

112. Rather, the CFA requires merely a causal nexus between the false statement and the purchase, not actual reliance. See <u>Lee v. Carter-Reed Co., L.L.C.</u>, 203 N.J. 496, 522 (2010) (**"causation under the CFA is not the equivalent of reliance"**).

113. As stated by the New Jersey Supreme Court in <u>Lee</u>, 203 N.J. at 528:

> **"It bears repeating that the CFA does not require proof of reliance, but only a causal connection**

       between the unlawful practice and ascertainable loss."

114. The purchase of a credence good, where the label on the product contains false misrepresentations of material fact, by itself, establishes a presumption of a causal nexus under the CFA. See Lee v. Carter-Reed Co., L.L.C., 203 N.J. 496 (2010). See also Varcallo, at *49 (**"the purchase of the policy by a person who was shown the literature would be sufficient to establish prima facie proof of causation."**).

115. By the acts alleged herein, Defendants have violated the CFA.

116. Specifically, Defendants have made identical, false, written, misstatements of affirmative fact on the label of each container of the Product sold in New Jersey, as outlined previously.

117. These statements were false when made and Defendants knew that these statements were false when made.

118. As a result of these false, written affirmative misstatements of material fact, Plaintiff and Class have suffered an ascertainable loss of money.

119. Specifically, Plaintiff and the members of the Class have been deprived of the benefit of the promised bargain – a valid measure of "ascertainable loss" under the CFA according to the New Jersey Supreme Court and New Jersey Appellate Division – in that Plaintiff and the members of the New Jersey Sub-Class received something less than what was represented by Defendants on the Product's label.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this court to:

   a. Certify the proposed Nationwide Class actions pursuant to Fed. R. Civ. P. 23;

   b. Enter an order for injunctive, equitable and declaratory relief as described herein;

c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

d. Award restitution and disgorgement of ill-gotten gains to Plaintiff and the putative class;

e. Award plaintiffs reasonable attorneys' fees and costs;

e. Award plaintiffs and the class treble damages where appropriate; and

f. Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

By: s/Todd M. Friedman
Todd M. Friedman (SBN: 216752)

**LAW OFFICE OF TODD M. FRIEDMAN**
324 Beverly Dr., #725
Beverly Hills, CA 90212
Tel: (877) 206-4741
Fax: (866) 633-0228
tfriedman@attorneysforconsumers.com